IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED
02 SEP 30 AM 10: 39
U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| **SHARMAINE JEMISON** | ) | |
| Plaintiff, | ) | |
| vs. | ) | Civil Action Number |
| | ) | 00-C-3744-S |
| **NHC HEALTHCARE,** | ) | |
| Defendant. | ) | |

ENTERED
SEP 30 2002

**MEMORANDUM OF OPINION**
**GRANTING MOTION FOR SUMMARY JUDGMENT**

Before this Court is Defendant's Motion for Summary Judgment. Based on the undisputed facts which follow, the Defendant is entitled to judgment as a matter of law.

**I. UNDISPUTED FACTS**

1. Plaintiff Sharmaine Jemison is an African-American female. She submitted an application for employment with Defendant NHC Healthcare ("NHC"), expressing her interest in a number of positions.

2. Jemison was subsequently hired by Defendant in the dual role of Receptionist and Insurance Clerk. Plaintiff was the only African-American woman employed in the business department at NHC.

3. All new employees at NHC must complete a 90-day probationary period in order to become full-time employees. New employees are informed by the company handbook that

> "[y]our interest and suitability for the job is determined during your first ninety (90) days of employment. During this work test period, you should

1

31

> strive to show what can be expected of your work performance. All partners are required to satisfactorily complete their introductory period."

4. During her employment, Jemison served as the receptionist two days per week and worked as an insurance clerk during the remainder of the week. She also filled in for Shylia Brown, a white employee who was the full-time receptionist, during the lunch hour. Jemison received training for all of her duties in both positions. She understood her duties as initially explained to her and felt that she could ask another employee for assistance should questions arise.

5. Jemison was excluded by the four white employees who would often gather in an office together for lunch and shut the door. Jemison never ate lunch with them because she served as the receptionist during that time.

6. Normally, employees are evaluated once at the end of their ninety-day probationary period. Jemison received two thirty-day evaluations during her probationary period.

7. During her second thirty-day evaluation, Jemison was informed that other employees "did not feel comfortable" working with her and that her supervisors had noticed performance problems.

8. Jemison's supervisors spoke to her on several occasions concerning her performance. Specifically, they told her that she was very slow at completing tasks, that many of her tasks were performed incorrectly, that she complained about the telephone "getting on her nerves," that she was often uninformed about insurance issues, and that she complained that employees were asking too many questions about their insurance benefits.

9. Jemison was terminated on June 1, 2000, during her probationary period. The articulated reason for Jemison's termination was poor performance. Shylia Brown, the white receptionist, replaced Jemison as the insurance clerk.

10. On June 19, 2000, Jemison filed a charge of discrimination against NHC with the Equal Employment Opportunity Commission ("EEOC").

11. The EEOC notified Plaintiff that it "was unlikely that further investigation of [the] charge would result in a finding that the law had been violated." It issued Plaintiff a notice of her right to sue NHC. On December 29, 2000, Jemison timely filed this action.

## II. APPLICABLE LAW

Summary judgment is appropriate where the movant demonstrates that there is no genuine issue as to any material facts and that, based upon the undisputed facts, it is entitled to judgment as a matter of law. *See Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1081 (11th Cir. 1990). When ruling on a motion for summary judgment, the court must view the facts in a light favorable to the nonmoving party.

The Eleventh Circuit recently changed the summary judgment standard in employment discrimination cases, stating that "the summary judgment rule applies in job discrimination cases just as in other cases." *Chapman v. AL Transport,* 229 F.3d 1012, 1026 (11th Cir. 2000). This decision abrogated the previous view that summary judgment was not a proper vehicle for employment discrimination claims which often turn on an employer's motivation and intent. Id. at 1025 (citing *Delgado v. Lockheed-Georgia Co.*, 815 F.2d 641, 644 (11th Cir. 1987); accord *Batey v. Stone,* 24 F.3d 1330, 1336 (11th Cir. 1994)).

In order to establish a *prima facie* case of discriminatory discharge under Title VII, a plaintiff must prove that (1) she was a member of a protected class; (2) she was qualified for the position at issue; (3) an adverse employment action was taken against her; and (4) the employer treated similarly situated employees outside the protected class more favorably. *McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792 (1973), *see Holifield v. Reno,* 115 F. 3d 1555, 1562 (11th Cir. 1997.) After the plaintiff establishes her prima facie case, the burden shifts to the defendant to articulate non-discriminatory reasons for the employee's discharge. The plaintiff then bears the burden of showing that the employer's reasons are merely pretext. *Id.*

### III. ANALYSIS

Jemison has failed to establish the fourth element of her *prima facie* case of discriminatory discharge: that similarly situated employees outside of the protected class, i.e., whites, were treated more favorably.[1] There is simply no evidence that similarly situated white employees were treated more favorably.

During her period, Jemison was reprimanded on several occasions about her performance problems. The undisputed evidence shows Jemison did not distribute faxes promptly, did not complete orientation folders correctly, became irritated when employees asked questions about their insurance benefits, procrastinated in making name badges, misdirected phone calls, and failed to lock cabinets which contained confidential files when she left for the day.

There is no evidence that the NHC failed to discharge any white probationary employee who presented the same kinds of performance problems as Plaintiff. Indeed, there is no evidence that any white employee, probationary or tenured, presented the same kind of performance problems as Plaintiff.

Because Plaintiff has failed to prove that a white probationary employee presented performance problems similar to hers, it is of no legal moment that, unlike the white

---

[1] Employees "similarily situated" to Jemison would be other probationary employees, because probationary employees, as a class, are subject to different standards than full-time employees. *Lathem v. Dept. of Children & Youth Services,* 172 F. 3d 786 (11th Cir., 1999).

4

probationary employees, she was subjected to two evaluations. After the first evaluation, which was basically positive, Plaintiff's performance problems became more severe. In the absence of racial motivation, which has not been shown, Defendant had the right to immediately fire Plaintiff after her performance deficiencies became evident. The fact that Defendant, in effect, gave her a second chance is not evidence of pretext.

In the absence of evidence that white probationary employees were treated differently, Defendant is entitled to judgment as a matter of law.

## CONCLUSION

Based on the undisputed facts and the law, Defendant's Motion for Summary Judgment will be granted by separate order.

Done this 30th day of September 2002.

_____
Chief United States District Judge
U.W. Clemon

5